UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APOLLO JOHNSON #343032,

    Plaintiff,                                               Hon. Jane M. Beckering

v.                                                               Case No. 1:21-cv-186

ROBERT GOODSPEED,

    Defendant.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by a prisoner incarcerated with the Michigan Department of Corrections (MDOC). Plaintiff alleges that Defendant Hearing Investigator Robert Goodspeed retaliated against him in violation of the First Amendment. The alleged retaliation occurred at the Oaks Correction Correctional Facility (ECF).

Now before me is Defendant Goodspeed's Motion for Summary Judgment. (ECF No. 35.) Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED,** and that Plaintiff's complaint be **dismissed with prejudice**.

**I. Background**

On June 14, 2019, non-Defendant Corrections Officer Jacobs wrote Plaintiff a misconduct ticket based on "sexual misconduct." (ECF No. 36-2.) Defendant Goodspeed was assigned as the Hearing Investigator for the misconduct ticket. (*Id.* at PageID.303.) The hearing on the misconduct was held on June 20, 2019. In his Misconduct Hearing Report, the Hearing Officer noted that Plaintiff had been asked if he wanted to attend the hearing but refused to get dressed so that he could attend. Thereafter, the Hearing Officer found Plaintiff guilty of the misconduct. (*Id.*)

Plaintiff claims that he sent Goodspeed a "kite" requesting his hearing package to appeal the misconduct finding, but did not receive it, so he filed a grievance against Goodspeed. (ECF No. 36-3 at PageID.309–10.) In the grievance (the 1986 Grievance), Plaintiff used Goodspeed's full name, Robert Goodspeed, six times. (ECF No. 36-4.) Plaintiff contends that there is no policy precluding a prisoner from using a prison employee's first name in a grievance. (ECF No. 36-3 at PageID.313, 315.) Plaintiff concedes that verbally using a staff member's first name constitutes insolence. (ECF No. 40 at PageID.377.) The 1986 Grievance was denied at all three steps of the grievance process. (ECF No. 36-4.)

On October 9, 2019, Goodspeed issued Plaintiff a Class II misconduct ticket for insolence for using Goodspeed's first name in the 1986 Grievance. (ECF No. 36-5.) In this misconduct ticket, Goodspeed stated: "I am not friends with prisoner Johnson and nor are he and I on a first name basis. My title is Hearings Investigator Goodspeed[;] that is how prisoner Johnson is to address this person. Johnson using my first name when referring to this employee cause[s] [me] alarm . . . ." (*Id.*) Following a misconduct hearing on October 17, 2019, Hearing Officer M. Haske found Plaintiff guilty of insolence and imposed a sanction of seven days loss of privileges. (*Id.* at PageID.345.)

On October 23, 2019, Plaintiff filed a grievance (the 2101 Grievance) against Goodspeed for issuing the October 9, 2019 Class II misconduct ticket, alleging that it was retaliatory. (ECF No. 36-6) In the 2101 Grievance, Plaintiff used Goodspeed's full name six times. The 2101 Grievance was rejected at all three steps of the grievance process. (*Id.*) The day after Plaintiff filed the 2101 Grievance, Goodspeed issued him another Class II misconduct ticket for insolence based on Plaintiff's use of Goodspeed's full name in the 2101 Grievance. (ECF No. 36-7.) Following a

misconduct hearing, Hearing Officer Lieutenant Baker found Plaintiff guilty of insolence and imposed a sanction of ten days loss of privileges. (*Id.* at PageID.353.)

Goodspeed has previously issued a Class II misconduct ticket for insolence for using his first and last name in a grievance. (ECF No. 36-8 at PageID.356–57.) In November 2018, prisoner Douglas Jackson used Goodspeed's first and last name in a grievance. (*Id.* at PageID.367.) Goodspeed wrote Jackson a misconduct ticket for insolence for using Goodspeed's first and last name in the grievance. (*Id.*) On November 13, 2018, following a misconduct hearing, Hearing Officer Johnson found Jackson guilty of insolence and imposed a sanction of 20 days loss of privileges. (*Id.* at PageID.36-8.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.  Discussion

A plaintiff must prove the following elements to establish a prima facie case of retaliation: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the

adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To satisfy the causal connection requirement, the plaintiff must show that the defendant's retaliatory motive was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, __ U.S. __, 139 S. Ct. 1715, 1722 (2019). Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. *Thaddeus–X*, 175 F.3d at 399; *see Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001).

Defendant Goodspeed contends that Plaintiff's claim fails on all three elements of his claim. He further argues that he is entitled to qualified immunity.

  **A.**  **Protected Conduct**

"An inmate has a First Amendment right to file grievances against prison officials, provided that the grievance is non-frivolous." *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (citing *Smith*, 250 F.3d at 1037, and *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). Goodspeed does not disagree with this proposition, nor does he argue that Plaintiff's grievances were frivolous. He notes, however, that a prisoner is considered not to be engaged in First Amendment activity if his conduct violates legitimate prison regulations or penological objectives. (ECF No. 36 at PageID.293) (citing *Thaddeus-X*, 175 F.3d at 395, and *Smith*, 250 F.3d at 1037.) *See also Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that the plaintiff's statement during a misconduct hearing that the hearing officer was a "foul and corrupted bitch" constituted "insolent" behavior under MDOC Policy Directive 03.03.105 and thus did not amount to protected conduct). In particular, Goodspeed contends that Plaintiff's use of his first name in the two grievances violated MDOC Policy Directive 03.03.105, which addresses prisoner discipline and defines prisoner insolence as: "Words, actions, or other behavior which is intended

to harass, degrade, or cause alarm in an employee." *Id.*, attach. B (code 426). According to the policy, common examples include "[u]sing abusive language to refer to an employee; writing about or gesturing to an employee in a derogatory manner." *Id.* Goodspeed also points to his affidavit, in which he states that "[i]t is improper for MDOC staff to have friendly or overly familiar relationships with prisoners," and MDOC staff are subject to, and may be punished for violating, work rules that prohibit overfamiliarity with prisoners. (ECF No. 36-8 at PageID.356.) Goodspeed notes that overly familiar or close relationships with prisoners can lead to serious security and safety issues, which is why he does not allow prisoners to refer to him by his first name, but instead instructs them to call him "H.I. [Hearing Inspector] Goodspeed," or "Goodspeed." (*Id.*) Goodspeed also states that if a prisoner refers to him by his first name, including in writing, he generally will issue the prisoner a misconduct ticket for insolence. (*Id.*) Aside from his affidavit to establish Plaintiff's use of his first name as insolence, Goodspeed argues that the fact that other MDOC staff found Plaintiff guilty of insolence confirms his view of the issue and shows that Plaintiff was not engaged in protected conduct.

Plaintiff disputes that his use of Goodspeed's first name in the subject grievances constituted insolence. First, he contends that his use of Goodspeed's first name "hardly fits the description of over[] familiarity," as such term refers to a prisoner trying to become "acquainted, friendly, or informal" with an MDOC staff member. (ECF No. 40 at PageID.377.) Second, Plaintiff contends that the definition of "insolence" in Policy Directive 03.03.105 clearly does not apply to use of an MDOC staff member's first name in a grievance. (*Id.* at PageID.378.) Third, Plaintiff notes that the MDOC has not issued any policy directive, rule, or memorandum prohibiting the use of staff members' first names in grievances. (*Id.* at PageID.379.) Finally, he asserts that he has

5

sent kites, memoranda, grievances to Goodspeed and other staff members using their first names, without receiving a misconduct ticket for insolence. (*Id.*; ECF No. 40-10; ECF No. 40-11.)

Plaintiff also cites a decision from the Eastern District of Michigan, *Young v. Ream*, No. 2:19-cv-10729, 2020 WL 7701021 (E.D. Mich. June 30, 2020), *report and recommendation adopted*, 2020 WL 7395992 (E.D. Mich. Dec. 16, 2020), which involved substantially similar facts. In *Young*, the plaintiff sent a letter to the defendant grievance coordinator regarding a grievance rejection. As in this action, the defendant issued the plaintiff a misconduct ticket for "insolence" for using her first name in the letter. *Id.* at *2. As to whether the letter constituted protected conduct, the defendant argued, as Goodspeed does here, that the letter constituted insolence because it demonstrated overfamiliarity between a staff member and a prisoner and caused the defendant alarm because it suggested that the plaintiff had become too familiar with the defendant. The defendant also cited the decision upholding the guilty finding on appeal. *Id.* at *4–5. Nonetheless, the court found that an issue of fact remained as to whether the plaintiff's letter constituted protected conduct. First, it noted that, although the defendant had cited a work rule in her affidavit—as Goodspeed does here—she failed to provide a copy to the court. Next, citing the examples of "insolence" in the policy directive, the court observed that, "at least on its face, a prisoner addressing a letter to an MDOC employee using her first and last name does not seem to fit with the listed examples." *Id.* at *5. Finally, it noted that in response to the plaintiff's inquiry, the MDOC's Public Information Office confirmed that the MDOC does not specifically prohibit prisoners from using the full name of any MDOC staff member. *Id.* at *5–6.

Here, as in *Young*, I conclude that Plaintiff has presented sufficient evidence to create an issue of fact as to whether his grievances constituted protected conduct. First, as in *Young*, Goodspeed refers to "work rules" in his affidavit, but he has not submitted a copy of such rules to

the Court. Second, I agree with the *Young* court's observation that use of an MDOC employee's first name in a communication or other document does not seem to fit with the examples of insolence set forth in the policy (*i.e.*, use of abusive language or derogatory gestures toward MDOC staff). Third, as in *Young*, there is no evidence that the MDOC specifically prohibits use of an employee's first name in a grievance or written communication. Finally, while not dispositive of the issue, I note that neither grievance was rejected as improper under the MDOC's grievance policy for containing threatening or demeaning language. Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ J.2.

**B.    Adverse Action**

An action is adverse if it would deter a person of ordinary firmness from engaging in that conduct. *See Thaddeus-X*, 175 F.3d at 394. Goodspeed does not dispute that a misconduct ticket can constitute adverse action for purposes of a prisoner's retaliation claim, particularly where it entails the loss of privileges. *See Maben v. Thelen*, 887 F.3d 252, 267 (6th Cir. 2018). Indeed, the Sixth Circuit has said that the deterrent effect "need not be great in order to be actionable," *Thaddeus-X*, 175 F.3d at 397, and "unless the claimed retaliatory action is truly 'inconsequential,' the plaintiff's claim should go to the jury." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (citing *Thaddeus-X*, 175 F.3d at 398). Here, it is undisputed that Plaintiff received sanctions of seven days and ten days loss of privileges on the respective misconduct tickets.

Goodspeed argues, however, that because Plaintiff received misconducts for using Goodspeed's first name in both grievances, the issuance of a misconduct ticket in this instance would deter a person of ordinary firmness from engaging in the specific act of using an MDOC staff member's first name in a grievance. Given this circumstance, he continues, the misconducts clearly did not deter Plaintiff from filing grievances or lawsuits because he filed the 2101 Grievance after being found guilty of insolence on the misconduct for the 1986 Grievance. Thus,

Goodspeed argues, there was no adverse action based on protected conduct. (ECF No. 36 at PageID.295.)

This argument has two flaws. First, at most, it can only apply to the 2101 Grievance because Goodspeed has not shown that Plaintiff received a misconduct ticket for insolence prior to filing the 1986 Grievance. In other words, there is no indication that Plaintiff was on notice that using an MDOC staff member's first name in a grievance could be punished as insolence. More importantly, it is well established that "[a]n adverse action is one that is 'capable of deterring a person of ordinary firmness' from exercising the constitutional right in question." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Bell*, 308 F.3d at 606). The test is objective and is not tailored to the specific plaintiff in the case. Thus, that Plaintiff himself was not deterred is not fatal to his retaliation claim. *See Ball v. Evers*, No. 19-10315, 2021 WL 3164273, at *10 (E.D. Mich. July 27, 2021) ("Even if Ball himself was not intimidated, the measure of adversity is objective, that is, whether a person of ordinary firmness would be deterred, not whether the plaintiff himself actually was deterred." (cleaned up) (quoting *Holzemer v. City of Memphis*, 621 F.3d 512, 525 (6th Cir. 2010))).

  **C.**  **Causal Connection**

Proof of a causal connection is where Plaintiff's claim fails. While *Young* supports his claim on the first element, it *undermines* his claim on the third. In *Young*, the defendant submitted an affidavit explaining that use of a staff member's first name indicates an overly familiar relationship between the prisoner and staff member that can pose security and safety risks. The defendant stated that she was alarmed by the plaintiff's use of her first name in the letter because it suggested that the plaintiff had become too comfortable with her and presented a heightened risk of violence. She further stated that she wrote the insolence misconduct because she believed that the plaintiff's use of her first name was intended to harass or cause alarm in her, as defined by the

definition of insolence under Policy Directive 03.03.105, and said that she would have issued the misconduct ticket even if the plaintiff had not filed grievances because the letter was insolent and caused her to fear for her safety. 2020 WL 7701021, at *7–8. Given this affidavit, the court found that Plaintiff failed to raise a genuine issue of material fact as to whether the defendant would have issued the misconduct ticket absent the plaintiff's protected conduct, noting that the sole issue was whether the defendant acted with retaliatory animus:

> While Ream's contentions may not answer the question of whether she properly applied the MDOC's "insolence" standard, that question is not before the Court; Young's claim is not that Ream violated his First Amendment rights by punishing him for addressing her by her first name. Rather, Young's specific claim is that Ream punished him simply because he complained to her about her handling of G2. But Young presented no evidence to counter the distinct factual averments proffered by Ream as to why, separate and apart from (1) any formal policy against the use of first names by inmates, and (2) the substance of Young's Letter, she believed his conduct constituted "insolence."

*Id.* at *8. Thus, the court found that the plaintiff failed to establish his retaliation claim.

Here, as in *Young*, Goodspeed has submitted an affidavit explaining that it is improper for MDOC staff to have friendly or overly familiar relationships with prisoners and that a prisoner's use of a staff member's first name can give rise to "serious issues, such as extortion, assault, sexual misconduct, and other security concerns." (ECF No. 36-8 at PageID.356.) Goodspeed further states that, because of the potential issues that can arise from a prisoner's use of a staff member's first name, he does not allow prisoners to use his first name and instructs them to call him "H.I. Goodspeed" or "Goodspeed." Goodspeed states that if a prisoner refers to him by his first name, he generally issues them a misconduct ticket for insolence. (*Id.*) As an example, he notes that he issued a misconduct ticket for insolence to prisoner Douglas Jackson in 2018 for using Goodspeed's first name in a grievance. (*Id.* at PageID.356–57.) Finally, Goodspeed states that he issued the misconduct tickets to Plaintiff not because Plaintiff grieved him, but because Plaintiff's use of Goodspeed's first name amounted to insolence. (*Id.* at PageID.357.)

Plaintiff's evidence fails to rebut Goodspeed's affidavit and create a dispute of fact regarding causation. The issue here is not whether Goodspeed correctly applied the insolence regulation or improperly punished Plaintiff for using his first name. Rather, the issue is whether Goodspeed issued the misconduct tickets in retaliation for Plaintiff's grievances. Plaintiff's evidence falls short of establishing a retaliatory motive.

First, as to the prior Jackson grievance—which supports Goodspeed's assertion about his usual practice in response to a prisoner's use of his first name in a grievance—Plaintiff argues that his situation is different because Jackson did not use Goodspeed's "H.I." title, while Plaintiff did use it, as Goodspeed instructs. (ECF No. 40 at PageID.378.) But this argument misses the point. Plaintiff, like Jackson, used Goodspeed's first name, which was the issue cited in the misconduct tickets issued to both Jackson and Plaintiff. Next, Plaintiff says that he sent numerous kites, memoranda, and grievances to staff members at ECF, including Goodspeed, without receiving misconduct tickets for insolence. (*Id.* at PageID.379.) The examples he attaches as Exhibits K and L to his response, however, do not indicate that they were received by the intended recipients. Without some sort of proof of receipt, they do not establish the proposition for which Plaintiff offers them. One of those documents is Plaintiff's June 20, 2019 grievance against Goodspeed for failing to allow Plaintiff to attend his misconduct hearing. (ECF No. 40-10 at PageID.424.) Although Plaintiff points out that Goodspeed did not issue him a misconduct ticket for using his first name in this grievance, I note that this grievance was rejected due to Plaintiff's failure to follow the modified access procedure. Because the grievance was never processed on the merits, it is reasonable to assume that Goodspeed was not aware of it. In any event, Plaintiff has not shown otherwise. In addition, even if Plaintiff used other staff members' first names and they did not object or issue Plaintiff insolence misconduct tickets, that fact would not bear on Goodspeed's

10

subjective intent, as he may have taken a stricter view than other staff members of what constitutes overly familiar conduct or insolence by a prisoner. Perhaps Goodspeed's interpretation of insolence and that of the hearing officers who found Plaintiff guilty is unreasonable, but that still would not demonstrate a retaliatory intent. Plaintiff's disagreement with Goodspeed as to whether the use of a staff member's first name in a grievance constitutes overly familiar conduct or insolence under Policy 03.03.105 thus does not create an issue of fact as to whether Goodspeed acted with retaliatory animus.[1]

Accordingly, Plaintiff fails to rebut Goodspeed's evidence that he issued the misconduct tickets based on Plaintiff's use of his first name and not because of Plaintiff's protected conduct. Thus, Goodspeed is entitled to summary judgment. In light of this conclusion, Goodspeed's qualified immunity argument need not be addressed.

---

[1] Although not raised as part of Plaintiff's argument relating to a causal connection, Plaintiff asserts that Goodspeed wrote the October 9, 2019 misconduct ticket to give the appearance that Plaintiff had turned in the 1986 Grievance directly to Goodspeed, while the October 24, 2019 misconduct ticket indicates that Plaintiff turned in the 2101 Grievance directly to non-party Grievance Coordinator Todd Bassett. (ECF No. 40 at PageID.377.) Plaintiff's point, although not entirely clear, appears to arise from the court's statement in *Young* that a grievance that uses the first name of the staff member being grieved and submitted to a third-party grievance reviewer "is different than writing a letter *to* a particular staff member." 2020 WL 7701021, at *8. To the extent that the court meant that a letter sent directly to a staff member would be more likely to cause "alarm" in a staff member than a grievance sent to a party, I do not disagree with that observation. I do not, however, read the court's statement as suggesting that a staff member cannot have a legitimate concern about a prisoner's over familiarity when the prisoner uses the staff member's first name in a grievance submitted to a third party. In any event, whether Plaintiff submitted his grievances to a third party is immaterial; Goodspeed saw them either way.

## IV. Conclusion

For the reasons set forth above, I recommend that the Court **grant** Goodspeed's motion for summary judgment (ECF No. 35) and dismiss Plaintiff's complaint with prejudice.

Dated: November 22, 2022                               /s/ Sally J. Berens
                                                       SALLY J. BERENS
                                                       U.S. Magistrate Judge

## **NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).